IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MERLIN GODSTONE,

Plaintiff,

v.

DAVID PEDRO, et al.,

Defendants.

Case No. 2:24-cv-00181-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

Pro se plaintiff Merlin Godstone filed this action under 42 U.S.C. § 1983, alleging that Oregon Department of Corrections (ODOC) employees David Pedro, Stuart Young, Heidi Steward, M. Yoder, D. Bevan, and C. Scarr[1] violated his constitutional and state/federal statutory rights by refusing his access to two books, *The Satanic Bible* and *The Satanic Rituals*. Defendants are named in their individual and official capacities, and now move for summary judgment pursuant to Fed. R. Civ. P. 56. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, defendants' motion is granted and this case is dismissed.

[1] Defendants respective job titles at ODOC are as follows: Pedro, Superintendent; Young, Director of Religious Services; Steward, Director of Corrections; Yoder, Chief of Security; Bevan, Mailroom Administrative Assistance; and Scarr, Mailroom Supervisor.

## BACKGROUND

At all relevant times, plaintiff was an adult in custody (AIC) at Eastern Oregon Correctional Institution. On April 23, 2023, plaintiff received Mail Violation Notices informing him that two books addressed to him, *The Satanic Bible* and *The Satanic Rituals*, were rejected. Borello Decl. ¶¶ 4-5 (doc. 30). The Mail Violation Notices invoked Oregon Administrative Rule 291-131-0035(2), which prohibits any "[m]aterial that by its nature or content poses a threat or is detrimental to the security, safety, health, good order or discipline of the facility, adult in custody rehabilitation, or facilitates criminal activity." *Id.*; Or. Admin. R. 291-131-0035(2).

On May 19, 2023, plaintiff filed a grievance seeking reconsideration of the denial notices. Borello Decl. ¶ 7 (doc. 30). Young responded to plaintiff's grievance explaining that the requested books were "not authorized because they pose a threat to the safety, security, and orderly operation of ODOC facilities" and instead "provided a list of several other Satanist books and religious items that are authorized." *Id.*

On June 21, 2023, and August 7, 2023, plaintiff filed appeals of ODOC's decision, thereby exhausting his administrate remedies. *Id.* at ¶¶ 8-10.

On January 26, 2024, plaintiff commenced this action alleging the following claims: (1) deprivation of First Amendment and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983; (2) violation of the Religious Land Use of Institutionalized Persons Act (RLUIPA); (3) violation of the Religious Freedom Restoration Act (RFRA); (4) violation of Article 18 of the Universal Declaration of Human Rights; (5) violation of the Civil Rights Act of 1964; and (6) deprivation of state rights guaranteed under Article 1 of the Oregon Constitution and Or. Rev. Stat. § 169.076(13). Compl. pgs. 17-18 (doc. 2). As relief, plaintiff seeks exclusively injunctive

relief requiring ODOC to either provide him with *The Satanic Bible* and *The Satanic Rituals*, or ban other religious texts (such as the Bible and Quran). *Id.*

Plaintiff moved for summary judgment on March 22, 2024, which was denied without prejudice because defendants had "not yet waived service or otherwise been served." Order 1 (Apr. 24, 2024) (doc. 14).

On January 2, 2025, defendants filed the present motion for summary judgment. On January 7, 2025, the Court provided plaintiff with a "Summary Judgment Advice Notice," explaining this lawsuit's procedural posture and what was expected from plaintiff to survive summary judgment. Briefing was completed regarding that motion on February 14, 2025.[2]

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

---

[2] Plaintiff filed a sur-reply without leave from the Court, in contravention of LR 7-1(e). However, in light of plaintiff's pro se status and the potentially dispositive nature of defendants' motion, the Court considered his sur-reply and finds that it does not alter the outcome of this case.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630.

## DISCUSSION

Defendants contend that no disputed issues of material fact exist, such that summary judgment is appropriate, because plaintiff has not introduced evidence demonstrating his constitutional or statutory rights were violated and this District has "repeatedly upheld such prohibitions on those same two books." Defs.' Mot. Summ. J. 2 (doc. 29). Conversely, plaintiff maintains that ODOC's policy rejecting *The Satanic Bible* and *The Satanic Rituals* is itself unconstitutional and contrary to law because ODOC allows other purportedly similar religious texts. Pl.'s Resp. to Mot. Summ. J. 2-3 (doc. 33). Plaintiff further asks the Court to deny defendants' motion to allow him his "day in court." Pl.'s Sur-Reply to Mot. Summ. J. 4 (doc. 36).

### 1. Federal Claims

As noted above, plaintiff asserts federal claims under 42 U.S.C. § 1983 and the RLUIPA, RFRA, Universal Declaration of Human Rights, and Civil Rights Act of 1964. The Court addresses each in turn.

#### A. Section 1983 Claims

To prevail under 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) the conduct complained of deprived him or her of an existing federal constitutional or statutory right; and (2) the conduct was committed by a state actor or a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). It is undisputed that defendants qualify as a state actors for the purposes of § 1983.

## I. First Amendment and Equal Protection Claims

This District has upheld ODOC's prohibition of *The Satanic Bible* and *The Satanic Rituals* because it does not violate AICs' First Amendment or Equal Protection rights. *Johnson v. Williams*, 2011 WL 6778711, *6-12 (D. Or. Dec. 22, 2011); *Goninan v. Holmes*, 2014 WL 6966990, *5-10 (D. Or. Dec. 4, 2014). The Court finds these cases persuasive and adopts their reasoning as its own.

First, the prohibition does not violate plaintiff's rights under the Establishment Clause or to free speech/exercise because "the uncontradicted evidence in the record in this case shows that ODOC has not refused to recognize Satanism." *Johnson*, 2011 WL 6778711 at *6 (citation and internal quotations omitted); *see also* Borello Decl. ¶ 21 (doc. 30) (listing Satanic books, materials, and resources that are ODOC approved and available to AICs). Moreover, although ODOC's policy infringes upon plaintiff's rights to freedom of speech and freedom of exercise, it is nonetheless valid because "it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987)[3]; *see also Goninan*, 2014 WL 6966990 at *8 (balancing the *Turner* factors under indistinguishable circumstances to find that the defendants' "prohibition on allowing inmates to possess *The Satanic Bible* . . . and *The Satanic Rituals* is reasonably related to ODOC's legitimate penological interests in security and safety"); Borello Decl. ¶¶ 12-20 (doc. 30) (delineating the reasons these books threaten the security and safety of prison staff and AICs).

---

[3] Under *Turner* the Court must consider four factors in determining whether an infringing practice is reasonably related to a legitimate penological interest: (1) whether there is a "valid, rational connection" between the regulation and the legitimate interest in question, (2) whether alternative means of freely exercising the religious belief are available to the inmate, (3) the effect that accommodation, if granted, would have on the prison community and the allocation of prison resources, and (4) the presence of "ready alternatives" that the prison could use to fully accommodate the inmate's rights at de minimis cost to valid penological interests. 482 U.S. at 89-90. These factors are equally applicable to free speech and free exercise claims. *Jones v. Slade*, 23 F.4th 1124, 1144 (9th Cir. 2022).

Plaintiff's Equal Protection claim is equally unsuccessful:

> Despite [plaintiff's] extensive commentary on the themes of Christian and Islamic literature, ODOC is entitled to differentiate amongst literature based on varying degrees of perceived threats. I do not reach [plaintiff's] arguments on the contents of other texts because the facts show that ODOC provides [plaintiff] an opportunity to pursue his faith in a way comparable to his fellow prisoners that is reasonable under the circumstances, primarily regarding the legitimate risks ODOC personnel have identified as arising from the satanic texts. Accordingly, because the restriction at issue here is reasonably related to penological concerns over avoiding threats of institutional disruption and violence, it is not a violation of plaintiff's Fourteenth Amendment right of equal protection.

*Goninan*, 2014 WL 6966990 at *8. Defendants' motion is granted as to plaintiff's First Amendment and Equal Protection claims.

## II. Due Process Claim

Plaintiff contends he was denied due process because he was "never afforded an opportunity to be heard, given a meaningful statement of the exact reasons for the censorship or the right to appeal to an official other than the censor."[4] Compl. pg. 17 (doc. 2). To assert a violation of the Due Process Clause of the Fourteenth Amendment, a plaintiff must demonstrate that (1) he was deprived of a constitutionally protected liberty or property interest, and (2) constitutionally insufficient procedural protections accompanied the deprivation. *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Plaintiff fails to demonstrate either requirement.

To assert a protected property interest, the plaintiff must have a "legitimate claim of entitlement to it." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Here, as noted above, plaintiff does not have a "legitimate claim" to *The Satanic Bible* and *The Satanic Rituals* and thus no deprivation occurred. Even if plaintiff had a protected property interest in the texts, he was

[4] Plaintiff equally asserts a due process violation on behalf of the author, publisher, and sender of the rejected books. However, plaintiff lacks third-party standing to assert this claim because he has not alleged a special relationship with any third party, nor has he alleged any third party's inability to protect his or her own interests. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004).

afforded sufficient procedural protections. *See Hudson v. Palmer*, 468 U.S. 517, 534 (1984) (holding that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss" is available, such as the prison grievance system or state tort process); *see also* Borello Decl. ¶¶ 5-10 (doc. 30) (describing the prison grievance process plaintiff availed himself of to exhaust his claims). Defendants' motion is granted as to plaintiff's § 1983 claims.

**B. RLUIPA Claim**

This District has also found that ODOC's prohibition of the books *The Satanic Bible* and *The Satanic Rituals* does not violate an AIC's RLUIPA rights. That is, in evaluating an identical claim, this District concluded,

> even assuming that [the plaintiff] is a sincere practitioner of Satanism and that the exclusion of the texts at issue amounts to a substantial burden on his religious exercise . . . ODOC officials are justified in considering the texts at issue likely to create serious security and safety risks within the prison, both for inmates and prison staff. Defendants show a compelling state interest as required by *Cutter*. Additionally, preventing access to the literature at issue is the least restrictive means to meet that compelling interest because the material contained in the texts themselves creates the perceived risks and there is no less restrictive means for prevention than simply prohibiting the texts outright.

*Goninan*, 2014 WL 6966990 at *9 (citing *Cutter v. Wilkinson*, 544 U.S. 709, 722-23 (2005)); *see also Johnson*, 2011 WL 6778711 at *10-11 (granting summary judgment in favor of the defendants on the plaintiff's RLUIPA claim: "it is clear that *The Satanic Bible* is justifiably considered by prison officials . . . to create serious security and safety risks within the prison, for inmates and prison staff [thereby demonstrating] the required compelling state interest [and] preventing access to the book is the least restrictive means to meet that interest"). Accordingly, defendants' motion is granted as to plaintiff's RLUIPA claim.

    ### C. RFRA, Civil Rights Act of 1964, and Universal Declaration of Human Rights Claims

Although the Complaint alleges that ODOC's policy restricting access to *The Satanic Bible* and *The Satanic Rituals* violates his rights under RFRA, the Civil Rights Act of 1964, and Article 18 of the Universal Declaration of Human Rights, plaintiff does not "set forth specific facts showing that there is a genuine issue for trial" regarding these claims. *Anderson*, 477 U.S. at 256; Compl. 17-18 (doc. 2). Indeed, plaintiff does not allege under which specific provisions of these statutes his rights were violated, nor does plaintiff address these claims in response to defendants' motion or proffer any evidence in support thereof. Defendants' motion is granted as to plaintiff's remaining federal claims. *See Celotex*, 477 U.S. at 322-24 (summary judgment should be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden on proof at trial"); *see also Anderson*, 477 U.S. at 252 (in order to defeat a motion for summary judgment "there must be evidence on which the jury could reasonably find for the [non-moving party]"); *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1116 (9th Cir. 2003) ("conclusory allegations, unsupported by facts, are insufficient to survive a motion for summary judgment").

### 2. State Claims

In addition to his federal claims, plaintiff asserts state law statutory and constitutional claims. Where, as here, a district court dismisses "all claims over which it has original jurisdiction," it may, in its discretion, "decline to exercise supplemental jurisdiction." 28 U.S.C. § 1367(c)(3); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 940 (9th Cir. 2012). This discretion "enables district courts to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988). Significantly, the Supreme

Court has stated, and the Ninth Circuit has "often repeated, that in the usual case in which all federal-law claims are eliminated before trial, the balance of [these factors] will point toward declining to exercise jurisdiction over the remaining state-law claims." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (citation and internal quotations omitted).

First, this Court found no controlling precedent from an Oregon reviewing court regarding a violation of Or. Rev. Stat § 169.076(13), the statute plaintiff alleges defendants violated, making it a novel issue of state law. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law").

Second, all claims arising under federal law have been dismissed. *See Tuggle v. City of Tulare*, 2023 WL 4273900, *19 (E.D. Cal. June 29, 2023) (declining supplemental jurisdiction over the plaintiffs' state law claims where the § 1983 claims were resolved at summary judgment).

Finally, the risk of unfairness to the parties is minimal because the statute of limitations does not bar plaintiff from re-filling his state law claims in an Oregon court. *See Sain v. City of Bend*, 309 F.3d 1134, 1139 (9th Cir. 2004) (tort and 42 U.S.C. § 1983 claims are subject to a two year statute of limitations in Oregon). As a result, "there are no great hurdles to either party from litigating this case in state court, where the litigants can pick up where this Court leaves off" and "[f]airness does not favor either way as the parties can reach a fair verdict in state court." *Erwine v. Churchill Cnty.*, 2022 WL 705961, *10 (D. Nev. Mar. 9, 2022), *aff'd*, 2023 WL 2387584 (9th Cir. Mar. 7, 2023). The Court therefore declines to exercise jurisdiction over plaintiff's pendent state law claims.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment (doc. 29) is granted and this case is dismissed.

IT IS SO ORDERED.

DATED this 8th day of April, 2025.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge